CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LANTZ DOMOENCH DAY,<br>    Plaintiff,<br><br>v.<br><br>MS. BROOKSHIRE, *et al.*,<br>    Defendants. | Civil Action No. 7:24-cv-00557<br><br>By: Elizabeth K. Dillon<br>    Chief United States District Judge |

**MEMORANDUM OPINION**

Lantz Domoench Day, an inmate at Red Onion State Prison acting *pro se*, brought this civil rights action pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs. (Case No. 7:24-cv-270, Am. Compl., Dkt. No. 4.) The court severed the amended complaint in Case No. 7:24-cv-270 into two separate actions. (Case No. 7:24-cv-270, Dkt. No. 17.) The above-captioned matter involves allegations that defendants were deliberately indifferent to Day's need for mental health treatment. (Compl., Dkt. No. 1; Dkt. No. 1-2.) Day has also pled claims based on his housing assignment, the lack of a drug treatment plan, violation of the Prison Rape Elimination Act (PREA), and a violation of his right to privacy. (*Id.*)

Five defendants have filed two separate motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. Nos 17, 23.) Day has responded to the motions. (Dkt. Nos. 29, 37, 41.) Three of the defendants in this action are medical personnel: Ms. Brookshire, a psychologist, Dr. McDuffie, a psychiatrist, and A. Shepard, a psychology associate. The other two defendants are Sgt. Bentley and Carl Manis.

Defendants' motions to dismiss will be granted.

I. BACKGROUND

In considering a motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). The court has considered plaintiff's complaint. (Dkt. No. 1.)[1] The court has also considered the attachments to plaintiff's complaint which are integral to and explicitly relied upon in the complaint. *Zak v. Chelsea Therapeutics Int'l Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015).

In the light most favorable to the plaintiff, this suit is based upon the following events as set forth in Day's complaint. (Dkt. No. 1.) Day recounts that his mental health issues date back to 2008 and were exacerbated by an adult lifestyle of homelessness. He suffers from bipolar disorder, personality disorder, and post-traumatic stress disorder. (Compl. 26.)

Day describes ROSP as "virtually a lockdown facility." (*Id.*) An open day in population includes three and a half hours outside the cell broken up into one hour block times and the possibility of a final thirty minutes. Classification is based on race; age, gang affiliation, or sexual orientation are not considered until a conflict is presented. (*Id.* at 27.) Building units are a mixture of age groups so plaintiff is confined with younger gang members that are in regular gang fights with one another. The mental health department is the only source of assistance with housing. Units are available for the health and safety of certain inmates. (*Id.* at 28.)

When he arrived at ROSP in 2021, plaintiff explained to Ms. Brookshire, the resident counselor, that he suffers from paranoia and has difficulty in environments such as the general population at ROSP. (*Id.* at 29.) Day had been shot twice and almost killed by police. Dr.

---

[1] This case involves the allegations in pages 26–45 of the amended complaint from Case No. 7:24-cv-270. (Dkt. No. 1.) The court will refer to it as the complaint, not the amended complaint, for purposes of this action, unless otherwise appropriate.

2

McDuffie convinced plaintiff to try general population with a medicine regimen. Otherwise, Day would have been charged and his privileges revoked. (*Id.* at 29–30.) Dr. McDuffie is the only psychiatrist at ROSP and is only available on Thursdays and Fridays. (*Id.* at 30.) Because ROSP houses so many prisoners (700–800), Dr. McDuffie is usually unavailable. When he does meet with plaintiff, it is either at plaintiff's cell door or in the building vestibule. When meeting at the cell door during lockdown, other offenders can hear what is supposed to be a confidential conversation. (*Id.* at 30–31.) In the vestibule, correctional officers can overhear the conversations. (*Id.* at 31.) Plaintiff has repeatedly asked to meet in a more private setting. (*Id.* at 32.) Other offenders prey on offenders with mental health diagnoses.

Dr. McDuffie has been unable to create a working medicine regimen for Day. Due to his "workload and indifference," Dr. McDuffie gives Day the same medication that has proven to not work. (*Id.*) Dr. McDuffie asks if Day wants a higher dosage, which is reckless to Day's safety. (*Id.* at 33.) Moreover, even though Dr. McDuffie has assured Day that he would be in a less volatile environment, plaintiff has been in one of the most violent units on ROSP. After getting hip replacement surgery, Day was forced to move into the other worst unit at ROSP or continue to be charged with infractions. Day has been denied access to single-cell accommodations. (*Id.* at 34.)

Day had two private, in-office meetings to discuss psychological issues with Ms. Brookshire. Her progress reports gave the false impression that they were meeting together regularly and indicated that Day was doing better than he was doing. (*Id.* at 35.) Her reports also contradicted Dr. McDuffie's reports. Day did not receive informed consent until ten months after he arrived at ROSP and was receiving treatment. (*Id.* at 36.)

3

Pageid#: 303

Plaintiff pleaded with Dr. McDuffie to recommend that he be placed in a single-cell due to his diagnosis. Day is now in special housing without privileges. He is unable to attend his drug class or his computer class. (*Id.*)

Day reported a sexual harassment claim about a correctional officer in 2022. Sgt. Bentley verified that Day had filed the PREA claim. (*Id.* at 37.) Plaintiff spoke with Mr. Shephard and explained the stress caused by the incident. Shepard documented the visit. However, Shepard never reported the harm, and plaintiff did not speak to an investigator about the incident. (*Id.* at 38.) Day's grievance was rejected at Level II of the grievance process as unfounded based on a pending investigation by Carl Manis. (*Id.* at 39.)

Plaintiff has had no contact with family or friends for two years. Moreover, while plaintiff was committed to prison with drug treatment as one of the requirements, the DOC only began viable drug treatment as of January 1, 2024. (*Id.* at 40.) Day is also unable to attend drug class because he was forced to seclude himself in special housing. (*Id.* at 41.) Day is waiting on Dr. McDuffie to place him in a single-cell environment.

## II. ANALYSIS

### A. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a Rule 12(b)(6)

4

motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

In addition, *pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *See Manigault v. Capital One, N.A.*, CIVIL NO. JKB-23-223, 2023 WL 3932319, at *2 (D. Md. June 8, 2023). While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

**B. Deliberate Indifference**

To state a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived him of a right secured by the Constitution of the laws of the United States. 42 U.S.C. § 1983. Claims that prison officials were deliberately indifferent to an inmate's serious medical needs sound in the Eighth Amendment under the cruel and unusual punishment clause. *Estelle v. Gamble*, 429 U.S. 97, 104 (1979).

To sustain a deliberate indifference claim pursuant to § 1983, a plaintiff must make (1) a subjective showing that the officer was deliberately indifferent to his medical needs and (2) an objective showing that those needs were serious. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). To meet the subjective component, the officer must have "actual knowledge of the risk of harm to the inmate" and "the officer must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate from his medical needs." *Iko*, 535 F.3d at 241. The

5

subjective prong of a deliberate indifference claim is a "very high standard," and a showing of mere negligence will not meet it. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001). To meet the objective component, a serious medical condition is one that has been "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017).

### C. Bentley and Manis

Defendants Bentley and Manis are not medical personnel. To bring a medical treatment claim against non-treating prison officials, the plaintiff must show that the defendants: (1) failed to promptly provide an inmate with needed medical care, (2) deliberately interfered with the prison doctors' performance, or (3) tacitly authorized or were indifferent to prison physicians' constitutional violations. *James v. Va. Dep't of Corr.*, Civil Action No. 7:16cv00042, 2018 WL 1528217, at *7 (W.D. Va. Mar. 28, 2018) (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)). "If a prisoner is under the care of medical experts . . ., a nonmedical official will generally be justified in believing that the prisoner is in capable hands." *Iko*, 535 F.3d at 242.

The only description of Bentley in the complaint is that he investigated a PREA allegation made by Day and then referred Day to the mental health staff. This is not a plausible allegation of deliberate indifference. Instead, it shows that Bentley was responsive to plaintiff's complaint by referring Day to someone who could help. As to Manis, Day's only complaint is that Manis deemed a grievance to be "unfounded." To the extent that Day argues the grievance should have been upheld or decided in his favor, there is no constitutional right to a particular action or outcome in a prison grievance procedure. *See Keystone v. Hinkle*, Civil Action No. 7:12-cv-155, 2012 WL 5385636, at *2 (W.D. Va. Nov. 1, 2012) (dismissing claim where

plaintiff's "only allegations are that [defendants] failed to remedy the violations of his rights through grievance procedures"). Ultimately, neither Manis nor Bentley were personally involved in plaintiff's mental health treatment. *See, e.g.*, *Mungin v. Fishburn*, C/A No. 9:24-cv-04121-DCC-MHC, 2025 WL 920655, at *7 (D.S.C. Feb. 10, 2025) (listing the elements for supervisor liability—actual or constructive knowledge, inadequate response, and affirmative causal link—and explaining that § 1983 liability is "personal, based upon each defendant's own constitutional violations") (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) and *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001)).

Plaintiff's response to the motion to dismiss takes issue with the investigation, or lack thereof, into his PREA complaint because Day's abuse and molestation as a child was not accounted for. (Dkt. No. 29.) Day cannot amend his complaint via his brief. *See Mouzon v. Kincaid*, Civil Action No. 3:23-cv-101-HEH, 2025 WL 1899988, at *1 n.1 (E.D. Va. July 9, 2025) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief.") (citing *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)). Moreover, Day cannot state a claim based upon the PREA or an inadequate PREA investigation. *See Bracy v. Tully*, 1:22cv827 (RDA/WEF), 2022 WL 3229325, at *3 (E.D. Va. Aug. 10, 2022) (stating that there is "no basis in law for a private cause of action under § 1983 to enforce a PREA violation . . . .")

For these reasons, the court will grant the motion to dismiss filed by Bentley and Manis.

**D. Brookshire, McDuffie, and Shepard**

Defendants Brookshire, McDuffie, and Shepard move to dismiss for failure to state a claim, but in the alternative, they also move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. A motion to dismiss for lack of subject matter jurisdiction can be facial or factual. *Oliver v. Va. Bd. of Bar Examiners*, 312 F. Supp. 3d 515, 521 (E.D. Va. 2018). A facial challenge "asserts that the facts as pled fail to establish jurisdiction . . . ." *Id.*; *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2008). When a defendant brings a facial challenge, the court "assumes the truthfulness of the facts alleged" to decide if jurisdiction is established. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

The basis for defendants' argument that the court lacks subject matter jurisdiction is that plaintiff's complaint does not include a request for relief. *See Magwood v. United States Dist. Ct.*, C/A No. 2:13-307-DCN-BM, 2013 WL 869590, at *5 (D.S.C. Feb. 25, 2013) (noting the failure to "request any relief or suggest to this Court any remedy for his claims" and stating that if the court were "to find that Plaintiff's rights have been violated, but order no remedy, it would, in effect, be rendering an advisory opinion; such action is barred by Article III of the Constitution"). Even so, the court notes that the original complaint in the case that was severed includes a request for relief. (*See* Case No. 7:24-cv-270, Dkt. No. 1.) In response to the standard form prompt telling the plaintiff to "State what relief you seek from the Court", Day wrote "Injunctive, Punitive; Compensatory". (*Id.*) While an amended complaint supersedes the preceding complaint, it is not uncommon for *pro se* litigants to misapprehend the effect of an amended complaint. Accordingly, the court finds that it can infer a request for relief in this case based on the allegations in the original complaint from Case No. 7:24-cv-270 in combination

with the amended complaint from that matter (referred to as the complaint in this case). *See, e.g.*, *Lasher v. Stavis*, 17-CV-6632 (JPO), 2018 WL 2976016, at *2 (S.D.N.Y. June 13, 2018) ("Given Lasher's *pro se* status, the Court considers both the allegations in the original complaint and the allegations in the proposed amended complaint."); *Lee v. Cleve Her Many Horses*, No. CIV. 13-5019-JLV, 2014 WL 1331007, at *3 n.5 (D.S.D. Mar. 30, 2014) (explaining that in "cases where a plaintiff has filed an amended complaint, federal courts must resolve questions of subject matter jurisdiction by examining the face of the amended complaint" but in "[g]iving liberal interpretation to plaintiffs' *pro se* pleadings, the court will consider all exhibits referenced in the amended complaint but which are attached to the original complaint").

Defendants also argue that Day's claims are barred by the Prison Litigation Reform Act (PLRA) because plaintiff has not alleged any physical injury. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."). The Fourth Circuit has not directly addressed this issue, but other circuits have found that the "physical injury requirement is not a bar to filing suit, only a limitation on recovery, and § 1997e(e) limits a prisoner only from recovering damages that redress, or compensate him for, a mental or emotional injury, where no physical injury is shown." *Hoever v. Marks*, 993 F.3d 1353, 1360 (11th Cir. 2021); *Dontell v. Safford*, C/A No. 9:22-cv-01641-BHH-MHC, 2024 WL 4140717, at *27 n.19 (D.S.C. June 26, 2024) (collecting cases). Moreover, § 1997e(e) does not bar Eighth Amendment claims seeking injunctive relief or punitive damages. *See, e.g.*, *Garrett v. Lumpkin*, 96 F.4th 896, 898 (5th Cir. 2024) ("[I]n the Eighth Amendment context, the physical injury requirement of § 1997e(e) does not apply to requests for declaratory relief or injunctive

9

relief."); *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019) (suggesting that § 1997e(e) allows prisoners to seek nominal and punitive damages, as well as injunctive relief, for alleged Eighth Amendment violations).

However, the court ultimately agrees with Brookshire, McDuffie, and Shepard that Day fails to state a claim against any of them for deliberate indifference. To be clear, "[a] serious psychological impairment can qualify as a serious medical need." *Buffington v. Balt. Cnty., Md.*, 913 F.2d 113, 120 (4th Cir. 1990). Defendants do not dispute that Day's impairment could qualify as serious under this standard; however, the allegations are insufficient, under the subjective prong, to demonstrate a recognition that their "actions were insufficient to mitigate the risk of harm to the inmate from his medical needs." *Iko*, 535 F.3d at 241; *see also Miltier*, 896 F.2d at 851 (to constitute deliberate indifference to a serious medical need, "the treatment must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness").

As alleged in the complaint, Brookshire met with Day on several occasions, and Brookshire tracked his progress. (Compl. at 29, 35.) Day also met with McDuffie, who offered to adjust his medication dosages. Day suggests that he did not agree with this approach, but Day's disagreement with a course of treatment does not evince deliberate indifference. Finally, the only allegation regarding Shepard is that Day reported an alleged incident of sexual assault to Shepard, who documented the visit in a progress note. Day appears to allege that a grievance was processed relating to this incident, so it is unclear how this amounts to a claim of deliberate indifference against Shepard.

The court also notes Day's allegations that he did not approve of his housing assignment—for example, Day contends that he should have been given a single cell assignment

10

because of his mental health issues. Day's desire to be placed in a single cell is not of constitutional dimension. *See, e.g.*, *Hendrick v. Wexford Health Sources, Inc.*, 141 F. Supp. 3d 393, 405 (D. Md. 2015) ("A prisoner's strong desire to be in a single cell, based on his belief that his medical conditions cause difficulties with cellmates, does not entitle him to housing in a single cell unless medical providers have made a directive for a single cell based on a medical need."); *Harrison v. Burt*, No. 07-CV-11412, 2008 WL 4450286, at *13 (E.D. Mich. Sept. 29, 2008) ("While it is likely that single cell status would be more comfortable for plaintiff based on the issues associated with his condition, the standard for an Eighth Amendment claim is deliberate indifference, not comfortableness."). Finally, Day's allegations about the lack of privacy when discussing his mental health issues in a common area are not sufficient to state a claim, as a prisoner "does not have a Constitutional right to privacy in his personal medical information." *Davis v. Johnson*, Civil Action No. 2:21-cv-2311-BHH, 2023 WL 1794560, at *2 (D.S.C. Feb. 7, 2023); *Van Higgins v. Miller*, No. 1:12-cv-29-RJC, 2012 WL 4511524, at *2 (W.D.N.C. Oct. 1, 2012) ("[N]either the U.S. Supreme Court nor the Fourth Circuit has ever recognized a constitutional right in the privacy of prisoner's medical records.").

Day has not plausibly alleged deliberate indifference with respect to Brookshire, McDuffie, or Shepard; thus, these claims will be dismissed.[2]

---

[2] Similar to his opposition to the motion to dismiss by Bentley and Manis, Day has attempted to supplement the allegations in his complaint. (Dkt. No. 37 at 2–4.) This invalid attempt at amending his complaint cannot defeat the motion to dismiss.

11

III.  CONCLUSION

The court will issue an appropriate order granting defendants' motions to dismiss.

Entered:  September 29, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge